UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| A. P. G., | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
|     vs. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | )  No. 1:12-cv-00988-MJD-RLY |
|         Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant A.P.G., a minor, by her mother Mable J. Goodwin, requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382.[1]  For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I.    Procedural History

A.P.G. filed an application for SSI on July 9, 2009, alleging onset of disability as of August 1, 2007.  A.P.G.'s application was denied initially on August 28, 2009 and denied on reconsideration on December 8, 2009.  A.P.G. timely requested a hearing, which was held before Administrative Law Judge Mark C. Ziercher ("ALJ") on January 24, 2011.  The Appeals Council denied A.P.G.'s request for review on June 14, 2012, making the ALJ's decision the final decision for purposes of judicial review.  A.P.G., by and through her mother, filed her Complaint with this Court on July 19, 2012.

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

1

## II.    Factual Background and Medical History

A.P.G., now ten years old, was only four years old at the time of the alleged onset date of August 1, 2007.  In A.P.G.'s July 2009 disability report, her mother stated that Dr. Paul Joyner, O.D., is the treating physician that A.P.G. sees regularly for her visual impairment.  [R. at 168.] In August of 2007, Dr. Joyner diagnosed A.P.G. with 20/40 corrected vision, which resulted in school-time accommodations such as preferential seating and a magnification bar for reading. [R. at 329.]  Because her October 2007 scores in the area of cognitive/language and motor were below average, A.P.G. was eligible for services as a child with developmental delay.  [R. at 321.]

By that spring, however, A.P.G.'s condition began to improve.  A.P.G.'s February 2008 psychoeducational evaluation shows that "her visual processing was found to be a significant personal and normative cognitive strength, and her ability to integrate visual functioning with motor functioning was found to be average," with a special note that it was "likely [A.P.G.'s] visual functioning has little direct impact on her ability to perform in school."  [R. at 316.]  Her May 2008 school conference further shows that A.P.G.'s test scores were all in the average range, and she no longer qualified for services as a child with developmental delay.  [R. at 308.] The same report also indicated that A.P.G. suffered from headaches and stomach aches only when she did not wear her glasses all of the time, as was prescribed by Dr. Joyner.  [*Id.*]

The next wave of evidence is from the late summer of 2009, following the filing of A.P.G.'s function and disability reports with the Social Security Administration (SSA).  Her mother reported in September of 2009 that A.P.G. "is totally disabled due to physical and mental impairments" of visual impairment and separation anxiety.  [R. at 206.]  However, in August of 2009 A.P.G.'s grandmother, who lives with A.P.G. and sees her daily, reported that A.P.G. is "very bright and has no problems learning," "has no problems with her speech, no motor issues,

2

and no behavior issues," "has age appropriate hygiene and self care," "gets along with everyone," "has no problems playing and moving about," and "does not run into walls or bump into others due to vision." [R. at 189.] In A.P.G.'s August 2009 eye examination, Dr. Joyner diagnosed her with 20/30 corrected vision, an improvement from her previously diagnosed 20/40 corrected vision, and noted that A.P.G. "has full fields" and "[h]er vision does not cause any disability." [R. at 254.] Additionally, Dr. Steven Roush, State agency consultant, initially determined that A.P.G. has no medically determinable impairment or combination of impairments that medically equaled a listed impairment, affirming that A.P.G. had no limitation in any of the six developmental domains. [R. at 293-96.]

  That fall A.P.G. received treatment for her separation anxiety. Her October 2009 assessment at Dunn Mental Health Center diagnosed A.P.G. with separation anxiety as a result of being molested by her step brother, but she tested within normal limits in every aspect except for having an irritable mood. [R. at 371-72.] In October of 2009, A.P.G.'s teacher confirmed that she was doing well in kindergarten and displayed no problems or limitations in any of the six developmental domains. [R. at 210-16.] A November 2009 psychological examination by the Indiana Department of Human Services Disability Determination Bureau confirmed the separation anxiety due to the April 2009 molestation, but found no emotional, social, or behavioral problems. [R. at 347-49.] In a second childhood disability evaluation conducted on reconsideration in December 2009 by Dr. Joseph Gaddy and Dr. William Shipley, the State agency consultants confirmed that A.P.G. has no medically determinable impairment or combination of impairments that medically equaled a listed impairment and has no limitation in any of the six developmental domains. [R. at 350-51.]

At the hearing, A.P.G., her father, and her mother testified.  A.P.G., who had just turned seven at the time of the hearing, testified that she enjoys talking with her friends at school, playing video games, watching television, reading her schoolbooks, and playing on the computer, though she falls sometimes when she's running or riding her bicycle and she has to look at books closely to read them.  [R. at 38-42.]  A.P.G.'s father testified that she frequently runs into things, sits very close to the television, and has to take breaks to rest her eyes when she does her homework, but she is also a "very bright girl" with "excellent" grades.  [R. at 50-58.]  Finally, A.P.G.'s mother testified that A.P.G. had a personal aid work with her twice a week for twenty minutes each at school because of her vision, that she often falls into the large holes that their Siberian Husky digs, that her eyes tear up and she gets headaches when she reads for a long period of time, that she falls a lot when riding her bicycle without training wheels, that she sleeps in a bedroom with her grandmother because she cannot sleep alone, and that she broke her ankle once when she fell over a cement block while playing hide-and-seek.  [R. at 58-73.]

Also at the hearing, A.P.G.'s attorney requested, and the ALJ granted, that the record remain open for an additional month to allow A.P.G. to get an ophthalmological evaluation, an updated psychological evaluation, and a report from A.P.G.'s current teacher.  [R. at 48-49, 73-74.]  The ophthalmological evaluation, conducted by Dr. Robert Bloom in January of 2011, diagnosed A.P.G. with 20/25 corrected vision, an improvement from Dr. Joyner's 20/30 diagnosis in 2009.  [R. at 409.]  The January 2011 psychological evaluation notes that A.P.G. is sometimes bossy and misses her brother, but is otherwise in good health, intelligent, outgoing, a good listener, able to take care of her own daily routine, and able to timely complete her homework.  [R. at 411.]  Finally, the February 2011 teacher report shows no limitations in any of the developmental domains and notes that A.P.G. "is an average 1st grade student" who is "very

eager to help" and is "a very neat writer on regular lined paper." [R. at 438.] Because the updated records reported no apparent change in A.P.G.'s functioning, the ALJ did not feel the need to "get a better read on" her functioning through an updated consultative examination. [*See* R. at 49.]

### III. Applicable Standard

For an individual under the age of eighteen to be eligible for SSI, a claimant must have a disability according to 20 C.F.R. § 416.924. The Act defines disability of a child as a "physical or mental impairment, which results in marked and severe functional limitations, and . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). In determining whether a minor claimant is disabled, the Commissioner employs a three-step sequential analysis: (1) if the claimant is engaged in work that qualifies as substantial gainful activity, she is not disabled regardless of her medical condition, age, education, or work experience; (2) if the claimant does not have a medically determinable, severe impairment or combination of impairments, she is not disabled; and (3) if the claimant does not have an impairment that meets, medially equals, or functionally equals a Listing or does not meet the twelve-month durational requirement, she is not disabled. 20 C.F.R. § 416.924(a), (b). *See also Murphy v. Astrue*, 496 F.3d 630 (7th Cir.2007); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483 (7th Cir.2007).

In considering whether a child's impairment functionally equals a Listing, the ALJ determines whether the claimant has an extreme limitation in one of the following domains or a marked limitation in two of the following domains: (1) Acquiring and using information, (2) Attending and completing tasks, (3) Interacting and relating with others, (4) Moving about and manipulating objects, (5) Caring for yourself, and (6) Health and physical well-being. 20 C.F.R.

416.926a(b), (d). In making such determinations, the ALJ must consider the functional limitations from all medically determinable impairments, regardless of whether an impairment to be taken into account is severe. 20 C.F.R. 416.926a(a).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000) (quoting Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. Overman v. Astrue, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." Dixon, 270 F.3d at 1176.

### IV. The ALJ's Decision[2]

The ALJ began by evaluating whether A.P.G.'s visual impairment met or medically equaled one of the listed impairments ("Listing") in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ first confirmed that A.P.G. was a preschooler on the date that the application was filed and is currently a school-aged child. [R. at 14.] Next, the ALJ followed the three-step child disability analysis and found that (1) A.P.G. has not engaged in substantial gainful activity and

---

[2] Because A.P.G. does not challenge the ALJ's findings regarding her separation anxiety, the Court limits its discussion of the ALJ's decision as to her visual impairment.

(2) A.P.G.'s astigmatism and anxiety disorder are "severe" impairments, as the medical and nonmedical evidence show that the impairments have more than a minimal effect on the claimant's functioning. [*Id.*] To determine whether A.P.G.'s visual impairment met or medically equaled a listed impairment, the ALJ considered the evidence under listing 102.02 for loss of visual acuity, listing 102.03 for contraction of visual fields, and listing 102.04 for loss of visual efficiency. The ALJ found that none of the listings were met or medically equaled, as A.P.G's 2011 ophthalmological exam with Dr. Bloom reported a visual acuity of 20/25 in both eyes [r. at 409], her 2009 optometrist report from Dr. Joyner reported that A.P.G. "has full fields" and her "vision does not cause disability" [r. at 254], and "the evidence fails to establish the required loss of visual efficiency" [r. at 14].

The ALJ then considered whether A.P.G.'s visual impairment functionally equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 by addressing the six domains for measuring a child's functionality. The ALJ first found no limitation in Acquiring and Using Information, as A.P.G. has "excellent grades," is doing very well in school, is able to read at grade level, and has no cognitive defects. [R. at 21.] The ALJ then found no limitation in Attending and Completing Tasks, as A.P.G., despite needing occasional breaks to rest her eyes, has no difficulty in focusing when she is doing homework or playing video games, does not have to be told twice to help with chores, and is able to stay on task. [R. at 22.] Despite a history of molestation and a clear preference for being with her mother and not sleeping alone, the ALJ found no limitation in Interacting and Relating with Others, as A.P.G. enjoys talking to her friends at school, does not have behavior issues, "interacts well with teachers and peers," and has a "bubbly" personality. [R. at 23.]

The ALJ then found a less than marked limitation in Moving About and Manipulating Objects, as, although her parents reported that A.P.G. is frequently injured from running into trees, falling into holes, and tripping down stairs because of her visual impairment, her live-in grandmother does not report any such behavior, she is able to write and color within the lines, and she participates in general physical education in school without limitation.  [R. at 25.]  In Caring for Yourself the ALJ also noted a less than marked limitation because, although she has some separation anxiety, A.P.G. enjoys age-appropriate activities and has no indication of regressive behaviors, self-injurious behaviors, or ignorance of safety rules.  [R. at 26.]  Finally, the ALJ found no limitation in Health and Physical Well-Being, as A.P.G.'s treatment history does not document any significant or ongoing treatment for watery eyes, headaches, or frequent falls.  [R. at 27.]  Without two domains with marked limitations or one domain with an extreme limitation on her functionality, the ALJ ruled that A.P.G. is not disabled under the Act.

## V.  Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's determination that A.P.G's visual impairment does not medically equal a Listing.  A.P.G. raises two relevant arguments[3] as to why this Court should reverse the decision of the ALJ: (1) the ALJ improperly failed to obtain an updated opinion from a State agency consultant after receiving the "illegible" 2011 pediatric ophthalmological evaluation from Dr. Bloom, and (2) the ALJ's decision to limit the weight given to the testimony of A.P.G.'s parents in determining functional equivalence contravenes Social Security Ruling 96-7p.  The Court examines these issues separately.

---

[3] Claimant's brief also contains a one-page argument asserting that substantial evidence fails to support the ALJ's determination that A.P.G. was not functionally disabled.  [Dkt. 21 at 12.]  Because the Court must review the ALJ's decision under the substantial evidence standard, this argument is incorporated into the second relevant argument, which addresses the ALJ's functional equivalence determination.

8

### A. Substantial evidence supports the ALJ's decision to find for a lack of disability without obtaining an updated opinion from a medical expert in 2011.

In determining whether the claimant's impairments medically equal a Listing, "[a]n ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Although the ALJ has a duty "to develop the claimant's complete medical history" for at least the twelve months preceding the month of disability application, the ALJ does *not* have a duty "to update objective medical evidence to the time of the hearing." *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) (quotations omitted). Where the medical evidence presented does not indicate the need for an updated medical examination, the ALJ is under no duty to order a consultative examination. *See Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir. 1991). It is instead "the claimant who bears the responsibility of providing medical evidence of an impairment." *Id.* at 348 (citing 20 C.F.R. § 404.1504, 404.1508).

A.P.G. claims that the SSA was duty bound to obtain an updated opinion from an agency consultant, specifically an ophthalmologist, to consider new evidence. [Dkt. 21 at 9.] Social Security Ruling 96-6p dictates that an ALJ is only required to obtain an updated medical expert opinion if one of the following two situations occurs: (1) no additional medical evidence is received, but the ALJ's opinion suggests that a judgment of equivalence may be reasonable or (2) additional medical evidence is received that, in the ALJ's opinion, may change the medical consultant's original finding that the claimant's impairment does not medically equal a Listing. Because additional medical evidence was received after the State agency consultants submitted their opinions, the latter situation applies.

Here, A.P.G. argues that her visual impairment medically equals Listing 102.00, claiming that her visual impairment "cause[s] her to function as if she was blind." [Dkt. 21 at 9.] The Act

9

defines blindness as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens."  20 C.R.F. § 404 app. 1.  In finding no limitations and no impairment that medically equaled a Listing, State agency consultants Dr. Roush, Dr. Gaddy, and Dr. Shipley cited to A.P.G.'s treating physician's diagnosis of 20/30 corrected vision and his note that A.P.G. has "no disability due to vision." [R. at 296-98, 353-55.]  Although additional medical evidence was received after these consultations were conducted, Dr. Bloom's 2011 exam diagnosed A.P.G. with 20/25 corrected vision, an improvement from the basis for the State agency consultants' opinions, and the ALJ, pursuant to SSR 96-6p, reasonably concluded that such evidence would not change the medical consultants' original findings.  A.P.G. further attempts to argue that Dr. Bloom's "illegible" notes warrant an updated consultative examination, but it is the **claimant's** burden to produce evidence that she is impaired to the point of disability, as discussed in *Howell*, and the submission of "illegible" notes **by claimant** from her own ophthalmologist fails to satisfy that burden.  Accordingly, the ALJ's failure to summon the opinion of a pediatric ophthalmologist in 2011 does not require reversal of the ALJ's decision.

     A.P.G. also argues that the ALJ "cited no evidence regarding medical equivalence to a Listing," asserting that the ALJ relied not on medical opinion but solely on the ALJ's layperson opinion. [Dkt. 21 at 10.]  This is a mischaracterization of the ALJ's decision.  It is not that the ALJ relies on no medical evidence, as he cited to the diagnoses of A.P.G.'s treating physician and of the pediatric ophthalmologist. [R. at 14.]  What the ALJ fails to cite directly in the relevant paragraph are the opinions of the State agency consultants, but this was not in error.  SSR 96-6p emphasizes that the ALJ "is responsible for deciding the ultimate legal question whether a listing is met or equaled," and, while the opinion of a State agency consultant "must be received into the record as expert opinion evidence and given appropriate weight," there is no

requirement that such an opinion be cited in any particular paragraph within the ALJ's decision. Later in his decision, the ALJ explicates that the State agency consultants' opinions "were given great weight because they are from experts that reviewed the evidence." [R. at 19.] Although the ALJ's discussion of the medical evidence may have been limited in the section determining that A.P.G.'s visual impairment did not meet or medically equal a Listing, the ALJ did not substitute his layperson opinion for medical evidence, and reversal of his decision is not warranted.

> **B.     Substantial evidence supports the ALJ's decision to limit the credibility awarded to the testimony of A.P.G.'s parents regarding her functionality.**

After an ALJ determines that a minor claimant's impairments neither meet nor medically equal a Listing, the ALJ must determine whether the claimant's impairments *functionally* equal a Listing by evaluating the developmental domains: (1) Acquiring and using information, (2) Attending and completing tasks, (3) Interacting and relating with others, (4) Moving about and manipulating objects, (5) Caring for yourself, and (6) Health and physical well-being. 20 C.F.R. 416.926a(b), (d). In evaluating the child's functioning, the ALJ takes into account the "whole child," measured by the child's activities as performed "at home, at school, and in the community." S.S.R. 09-1p. With no requirement to consult with medical experts at this stage, it is the ALJ who determines functional equivalence, based on the evidence presented. *Id.* Additionally, so long as the ALJ gives "specific reasons" for his credibility findings, the ALJ's measure of the credibility of the witnesses is given great deference; only a "patently wrong" determination will be overturned *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

A.P.G. argues that the ALJ's credibility determination contravenes Social Security Ruling 96-7p, and her parents' testimony regarding her functionality was improperly discredited. [Dkt. 21 at 12-14.] However, the ruling cited discusses an individual's credibility with regard to

11

"the evaluation of symptoms" and defines symptoms as "an individual's **own description of his or her** physical or mental impairment(s)." S.S.R. 96-7p (emphasis added). In other words, the ruling applies only to the relative credibility of the claimant herself, not of her parents. [R. at 38-44.] Accordingly, A.P.G. cannot rely on Social Security Ruling 96-7p in an attempt to reverse the ALJ's determination to give the reports of her parents only "some weight to the extent they are reasonably consistent with the record." [R. at 19.] However, even if S.S.R. 96-7p did apply, the ALJ is only bound to "consider the entire case record," and provide "specific reasons for the finding on credibility, supported by the evidence in the case record." S.S.R. 96-7p. If the ALJ takes these steps, he has not contravened the ruling and the Court will not reverse his decision.

In evaluating A.P.G.'s functioning, the ALJ received evidence and testimony regarding A.P.G.'s activity both at home and at school, pursuant to S.S.R. 09-1p. For such testimony, the ALJ relied on reports from A.P.G. herself, her mother, her father, her live-in grandmother, A.P.G.'s teachers, and other school officials. In his analysis, the ALJ acknowledged that, "despite her parent's reports of frequent falls, in August of 2009 the claimant's grandmother, who lives with the claimant, reported the claimant has no problems playing, no problems moving about, and no motor issues," and the grandmother also "denied the claimant runs into walls or bumps into others due to vision." [R. at 25.] The ALJ then observed that no one from A.P.G.'s school reported a "significant trouble running into things," but instead reported that A.P.G. "participates in general physical education without limitation." [*Id.*] While the ALJ did acknowledge, based on the reports of her parents, that A.P.G. has "some limitations" in Moving About and Manipulating Objects, he gave specific reasons for giving greater weight to the reports from A.P.G.'s grandmother and her teachers, as required by S.S.R. 96-7p. [*Id.*] Because only a "patently wrong" credibility determination will be overturned, the Court defers to the

ALJ's decision and finds that substantial evidence supports the ALJ's functionality determination.

## VI. Conclusion

For the aforementioned reasons, the Court finds that substantial evidence supports the ALJ's determination that A.P.G. is not disabled. The Commissioner's decision is **AFFIRMED**.

Date: __08/26/2013__

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov